BALES v. STATE ex rel. OKLA. REAL ESTATE APPRAISER BOARD



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BALES v. STATE ex rel. OKLA. REAL ESTATE APPRAISER BOARD

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BALES v. STATE ex rel. OKLA. REAL ESTATE APPRAISER BOARD
2021 OK CIV APP 18
492 P.3d 625
Case Number: 117238
Decided: 12/03/2020
Mandate Issued: 05/19/2021
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 18, 492 P.3d 625

 

MATTHEW BALES and GARRET PEARCE, Respondents/Plaintiffs/Appellants,
v.
STATE OF OKLAHOMA ex rel. OKLAHOMA REAL ESTATE APPRAISER BOARD, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE REBECCA B. NIGHTINGALE, TRIAL JUDGE

AFFIRMED

Daniel J. Gamino, DANIEL J. GAMINO & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Appellants

Stephen L. McCaleb, DERRYBERRY & NAIFEH, LLP, Oklahoma City, Oklahoma, for Appellee

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Matthew Bales and Garret Pearce (Appellants) appeal from the trial court's order affirming the decision of the Oklahoma Real Estate Appraiser Board to, among other things, suspend Appellants' appraiser credentials for a period of thirty days. Based on our review, we affirm.

BACKGROUND

¶2 Appellants are certified residential appraisers in Oklahoma. Mr. Bales was first licensed with the Board in 2007, and Mr. Pearce was first licensed with the Board in March 2017. In fact, this matter arises from the filing, in December 2016, of Mr. Pearce's application for an original license as a certified residential appraiser, a license which requires a minimum of 2,500 hours of appraisal-related experience hours.

¶3 As asserted by the Board on appeal, Mr. Pearce, with the assistance of his supervisor, Mr. Bales, "altered real life experience reports [subsequently submitted] to the Board and therefore the State was asked to [review the license application] with false information[.]" The Board, in its order dated March 7, 2018, stated as follows:

5. . . . [Mr. Pearce, as part of his application,] identified appraisal reports he worked on to obtain his 2,500 hours of appraisal-related experience. Among these were three reports that were reviewed by the [Board] as follows: a report [dated in October 2016] for a property located . . . in Edmond . . . ; another appraisal report [dated in September 2016] for a property located . . . in Coweta . . . ; and an appraisal report [dated in November 2016] for a property located . . . in Tulsa . . . .

. . . .

8. . . . [Mr.] Pearce was cleared for licensure after secondary reviews of the three reports.

9. A test card was issued to [Mr. Pearce] and he subsequently passed the examination.

10. . . . All three appraisal reports . . . were [subsequently] found to be different from the materials submitted to the Board [i.e., compared with those submitted to the applicable lenders] for [the] work product review. The modifications included changes to the neighborhood description, market conditions, summary of sales comparison approach, and in one instance, the site value was changed in the cost approach.

. . . .
17. Despite the testimony of [Mr. Bales] to the contrary that the changes he made in the amended appraisal report . . . were not material or substantive, upon review of the appraisal reports in the files of the Board . . . , the Cost Approach [in one of the reports, prior to being amended by Mr. Bales,] . . . indicates a significantly higher site value of $37,000.00 than [Mr. Bales'] site value of $25,000.00 for the subject property located [in Coweta] . . . .

18. Despite the testimony of [Mr. Bales] to the contrary that the changes he made in the amended appraisal report he submitted to the Board were not material or substantive, upon review [of the report for the property located in Tulsa] . . . , the Market Conditions Form [in one of the reports, prior to being amended by Mr. Bales,] indicates a significantly higher market value analysis (neighborhood value range) than [Mr. Bales'] concluded opinion of value . . . .

¶4 The Board also identified other discrepancies between the three original reports submitted to the applicable lenders and the three reports submitted as part of the license application process: i.e., the fourteen comparable sales in one of the original reports were increased to seventy comparable sales in the report submitted as part of the application process; a value-changing adjustment in one of the appraisals submitted as part of the license application process was not present in the report submitted to the applicable lender; one comparable sale was removed in one of the reports and replaced with one at a lower sales price; and removal of "quality of construction adjustments" from one of the reports submitted to the Board. The Board concluded that "[t]hese facts lead to the conclusion that [Mr. Bales] improved the appraisal reports[.]"

¶5 The Board set forth the following conclusions of law in its order:

1. [Appellants] have violated 59 O.S. § 858-723(C)(6) through 59 O.S. § 858-726, in that [Appellants] violated:

A) The Ethics, and Conduct Sections of the Uniform Standards of Professional Appraisal Practice Ethics Rule;
B) The Record Keeping Rule of the Uniform Standards of Professional Appraisal Practice.

2. [Appellants] have violated 59 O.S. § 858-723(C)(1): "Procuring or attempting to procure a certificate pursuant to the provisions of the Oklahoma Certified Real Estate Appraisers Act by knowingly making a false statement, knowingly submitting false information, refusing to provide complete information in response to a question in an application for certification or through any form of fraud or misrepresentation."

3. [Appellants] have violated 59 O.S. § 858-723(C)(5): "An act or omission involving dishonesty, fraud, or misrepresentation with the intent to substantially benefit the certificate holder or another person or with the intent to substantially injure another person."

4. [Appellants] have violated 59 O.S. § 858-723(C)(6): "Violation of any of the standards for the development or communication of real estate appraisals as provided in the Oklahoma Certified Real Estate Appraisers Act."

¶6 As to Mr. Bales, the Board suspended his "appraiser credential" for a period of thirty days, and also placed him on probation for a period of one year beginning on the end date of the suspension, during which Mr. Bales "shall provide [a monthly] appraisal log . . . detailing all his appraisal activity during the preceding month" and from which "[t]he Board may select and require samples of work product . . . [to] be sent for review . . . ." In addition, the Board ordered Mr. Bales to pay a portion of the costs incurred by the Board for legal fees and travel costs in this matter, and Mr. Bales was ordered to pay two administrative fines in the amount of $500 each. Finally, Mr. Bales was ordered "not [to] serve as a Trainee Supervisor for any person" for a period of three years.

¶7 Mr. Pearce similarly had his appraiser credential suspended for thirty days, was ordered to be placed on one year of probation, and was ordered to pay a portion of the costs incurred by the Board for legal fees and travel costs in this matter. Mr. Pearce was also ordered to pay an administrative fine in the amount of $500. Because, in order to be a Trainee Supervisor, one must be certified for at least three years, the Board ordered that Mr. Pearce (who did not become certified until 2017) not serve as a Trainee Supervisor for any person for a period of five years.

¶8 Appellants filed an administrative appeal from the Board's order in the district court, which affirmed the Board's order. Appellants then filed an appeal from the district court's order, and also filed an "Emergency Application for Stay" which was granted by order of the Oklahoma Supreme Court.[1]

STANDARD OF REVIEW

¶9 We review the Board's order pursuant to the Oklahoma Administrative Procedures Act (OAPA), 75 O.S. 2011 §§ 250-323, which provides for review of final agency orders. See also 59 O.S. 2011 §§ 858-725(C) ("Any final decision or order of the Board shall be reviewable by a court of appropriate jurisdiction in accordance with the provisions of the [OAPA]."). Under the OAPA, "the district court and this Court apply the same review standard for agency actions[.]" Taylor v. Okla. Water Res. Bd., 2015 OK CIV APP 99, ¶ 19, 368 P.3d 436 (citations omitted). Pursuant to the OAPA,

An appellate court may not substitute its judgment for that of the agency on the latter's factual determinations. An agency's order will be affirmed if the record contains substantial evidence in support of the facts upon which the decision is based, and if the order is otherwise free of error. An order is subject to reversal if an appealing party's substantial rights were prejudiced because the agency's findings, inferences, conclusions or decisions were entered in excess of its statutory authority or jurisdiction, were arbitrary or capricious, or were clearly erroneous in view of the reliable, material, probative and substantial competent evidence.

Okla. Dep't of Pub. Safety v. McCrady, 2007 OK 39, ¶ 10, 176 P.3d 1194 (footnotes omitted). The Oklahoma Supreme Court has further explained as follows:

Great weight is to be accorded the expertise of an administrative agency, and a presumption of validity attaches to the exercise of expertise when the administrative agency is reviewed by the judiciary. A court of review may not substitute its own judgment for that of an agency, particularly in the area of expertise which the agency supervises. The rationale for this rule is that courts do not possess the specialized knowledge, training, experience or competency to substitute opinions for the judgment of qualified experts. The legislature has recognized that the expertise in some cases of legislative authority is better left to those who have refined abilities in narrow areas, controlled only by general guidelines established by the legislature. If the facts determined by the administrative agency are supported by substantial evidence, and the order is otherwise free of error, the decision of the agency must be affirmed.

Tulsa Area Hosp. Council, Inc. v. Oral Roberts Univ., 1981 OK 29, ¶ 10, 626 P.2d 316 (footnotes omitted). See also City of Hugo v. State ex rel. Pub. Employees Relations Bd., 1994 OK 134, ¶ 10, 886 P.2d 485 ("[G]reat weight is accorded the expertise of an administrative agency. On review, a presumption of validity attaches to the exercise of expertise. An appellate court may not substitute its judgment for that of an agency, particularly in the area of expertise which the agency supervises." (footnote omitted)).

¶10 Issues of statutory interpretation are also presented on appeal, and we review issues of statutory interpretation de novo. Am. Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, 2014 OK 95, ¶ 25, 341 P.3d 56.

ANALYSIS

I. 59 O.S. §§ 858-723(C)(1) and (C)(5)

¶11 Appellants argue the Board's findings of violations of 59 O.S. Supp. 2015 §§ 858-723(C)(1) and 858-723(C)(5) of the Oklahoma Certified Real Estate Appraisers Act (OCREAA), 59 O.S. 2011 §§ 858-700 to 858-732, are not supported by sufficient evidence.[2] Sections 858-723 provides in part:

C. The rights of any holder under a certificate as a trainee, state licensed, state certified residential or state certified general real estate appraiser may be revoked or suspended, or the holder of the certificate may be otherwise disciplined pursuant to the provisions of the [OCREAA], upon any of the grounds set forth in this section. The Board may investigate the actions of a trainee, state licensed, state certified residential or state certified general real estate appraiser, and may revoke or suspend the rights of a certificate holder or otherwise discipline a trainee, state licensed, state certified residential or state certified general real estate appraiser for any of the following acts or omissions:

1. Procuring or attempting to procure a certificate pursuant to the provisions of the [OCREAA] by knowingly making a false statement, knowingly submitting false information, refusing to provide complete information in response to a question in an application for certification or through any form of fraud or misrepresentation;

. . . ;
5. An act or omission involving dishonesty, fraud, or misrepresentation with the intent to substantially benefit the certificate holder or another person or with the intent to substantially injure another person[.]

¶12 In the present case, the parties entered into a written stipulation as to certain factual matters not in dispute. Pertinent to this appeal, Appellants agreed that "[a]ll three appraisal reports" described above that were submitted to the Board as part of Mr. Pearce's application process "were found to be different from the materials" submitted to the lenders, and Appellants further agreed "[t]he modifications included changes to the neighborhood description, market conditions, summary of sales comparison approach, and in one instance, the site value was changed in the cost approach."

¶13 Moreover, Mr. Bales testified at the hearing before the Board that, in his own words, he engaged in the "fluffing up" of Mr. Pearce's reports for purposes of the application:

Q . . . [C]an you advise the Committee Members what process did you follow with Mr. Pearce in the preparation of his appraisals that were requested for review by the Board?

A Right. So after the Board requested the three appraisals, I sat down with Mr. Pearce and -- as a training process and honestly we wanted the reports to look as good as we possibly could for the reviewer, so I sat -- we sat down, and as a training process and just, like I stated, to make them -- you know, we wanted them to look as clean as we possibly could, and we sat down and went over the report together. I showed him some things like, you know, we could really add some comments here to, you know, make this sound better, be more descriptive -- I mean, if you look over some of the things there are just kind of -- I would call fluffing up the report to make it look as good as we possibly could . . . .

¶14 Mr. Bales testified that the reports in question "could have been done better initially" when they were sent to the client/lender, and Mr. Bales testified his changes to the reports for the application were "an attempt to make . . . the reports look squeaky clean when we sent them in"; he also testified that he was compelled to "fluff[] up" the reports because of his personal belief that Mr. Pearce was qualified to be certified. Mr. Bales testified: "I've been practicing or appraising for ten years now, so I have a pretty good idea if someone's qualified to appraise or not, and [Mr. Pearce was] at that level[.]" Mr. Bales testified: "We were more trying to fluff the reports up to try to make them look more presentable to a reviewer just to make sure that, you know, just to make sure that [he] got through on [his] first attempt." Nevertheless, Mr. Bales responded in the affirmative when questioned, "Do you understand why the Board has an issue with the submission of documents that are for the purpose of getting a license that are not actually what the applicant did?"

¶15 Appellants assert on appeal that a finding of a violation of § 858-723(C)(1) for "[p]rocuring or attempting to procure a certificate pursuant to the provisions of the [OCREAA] by knowingly making a false statement[] [or] knowingly submitting false information" was in error because, they assert, "in all of the Stipulations and the testimony taken by the Board below, there is no evidence from any witness that any changes or any modifications on any language in any appraisal report were found to be false. There is no identification of any false information." However, it is clear that the Board was of the opinion that the false information consisted not of the three reports submitted as part of the application process when viewed in isolation, but rather consisted of the submission of appraisal reports that were not the actual work product of Mr. Pearce.

¶16 We conclude the Board's application of § 858-723(C)(1) is consistent with the statutory language, which is specifically intended to guard against the fraudulent "procur[ing] [of] a certificate." Without commenting, here, on the level of severity of, or the level of discipline applied to, Appellants' actions, substantial evidence supports the Board's conclusion that Mr. Pearce's certification was procured "by knowingly making a false statement[] [or] knowingly submitting false information[.]" We further conclude the Board did not err in its application of § 858-723(C)(5), i.e., in finding "[a]n act or omission involving dishonesty, fraud, or misrepresentation with the intent to substantially benefit the certificate holder or another person . . . ."[3]

¶17 As stated by the Board on appeal, if certificates could readily be procured via "the submission of false information to the Board showing work product which was not the same that was submitted to their clients," this would "cause damage to the integrity of the profession," as well as to the public welfare.[4] The Board asserts: "In other words, the reports Appellants submitted to the Board to show real world experience" "did not show the quality of work completed in their professional capacity."

¶18 Although Appellants claim the changes to the reports were merely made as part of a teaching exercise[5] and that they were not aware their actions were inconsistent with any rules applicable to their certifications, § 858-709(C) of the OCREAA provides,

At the time of filing an application for certification, each applicant shall sign a pledge to comply with the standards set forth in the [OCREAA], and state that such applicant understands the types of misconduct for which disciplinary proceedings may be initiated against an Oklahoma certified real estate appraiser, as set forth in the [OCREAA].

¶19 We conclude the stipulated facts and testimony elicited at the hearing before the Board form a basis of substantial evidence in support of the Board's conclusions that Appellants violated 59 O.S. §§ 858-723(C)(1) and (C)(5).

II. Discipline Chosen by the Board

¶20 Having determined the Board did not err in concluding Appellants violated §§ 858-723(C)(1) and (C)(5), we next consider whether the discipline determined by the Board was arbitrary and capricious or outside its discretion. As quoted above, § 858-723(C) provides:

The rights of any holder under a certificate as a trainee, state licensed, state certified residential or state certified general real estate appraiser may be revoked or suspended, or the holder of the certificate may be otherwise disciplined pursuant to the provisions of the [OCREAA], upon any of the grounds set forth in this section. The Board may investigate the actions of a trainee, state licensed, state certified residential or state certified general real estate appraiser, and may revoke or suspend the rights of a certificate holder or otherwise discipline a trainee, state licensed, state certified residential or state certified general real estate appraiser for any of [these] acts or omissions[.]

Section 858-723(A) provides as follows:

The [Board], after notice and opportunity for a hearing, pursuant to Article II of the [OAPA], may issue an order imposing one or more of the following penalties whenever the Board finds, by clear and convincing evidence, that a certificate holder has violated any provision of the [OCREAA], or rules promulgated pursuant thereto:

1. Revocation of the certificate with or without the right to reapply;

2. Suspension of the certificate for a period not to exceed five (5) years;

3. Probation, for a period of time and under such terms and conditions as deemed appropriate by the Board;

4. Stipulations, limitations, restrictions, and conditions relating to practice;

5. Censure, including specific redress, if appropriate;

6. Reprimand, either public or private;

7. Satisfactory completion of an educational program or programs;

8. Administrative fines as authorized by the [OCREAA]; and

9. Payment of costs expended by the Board for any legal fees and costs and probation and monitoring fees including, but not limited to, administrative costs, witness fees and attorney fees.

¶21 As set forth above, the Board suspended Appellants' "appraiser credentials" for a period of thirty days, and also placed them on probation for a period of one year beginning on the end date of the suspension, during which they "shall provide [a monthly] appraisal log . . . detailing all . . . appraisal activity during the preceding month" and from which "[t]he Board may select and require samples of work product . . . [to] be sent for review . . . ." The Board also ordered Appellants to pay a portion of the costs incurred by the Board for legal fees and travel costs in this matter, and they were ordered to pay certain administrative fines. Finally, they were ordered "not [to] serve as a Trainee Supervisor for any person" for a certain period of time.

¶22 The Board did not impose the most severe form of discipline (i.e., revocation), nor did it impose the most severe form of suspension (i.e., a five-year suspension). On the other hand, the Board could have, of course, chosen a more lenient form of discipline, such as a private reprimand. Clearly, given the existence of statutory violations, the Board's choice of discipline is not in excess of its explicit statutory authority. However, as this Court explained in State ex rel. Oklahoma State Board of Behavioral Health Licensure v. Vanita Matthews-Glover, LPC, 2019 OK CIV APP 76, 455 P.3d 16, a board's choice of discipline, even if within its explicit statutory authority, must not be arbitrary or capricious. Under this test, though, the choice of discipline "will not be disturbed upon review by a trial or appellate court" absent a "manifest abuse" of the agency's discretion, and even if the chosen discipline appears harsh "according to the court's evaluation, the court is not free to substitute its own discretion for that exercised by the administrative agency." Id. ¶ 31 (citation omitted).

¶23 Furthermore, in Johnson v. Board of Governors of Registered Dentists of State of Oklahoma, 1996 OK 41, 913 P.2d 1339, the appellant, a dentist, argued "the Board [of Governors of Registered Dentists was] required to enact rules establishing guidelines for the imposition of disciplinary actions. [The appellant relied] on section 302(A)(2) of title 75 [of the OAPA] which requires each agency to 'adopt rules of practice setting forth the nature and requirements of all formal and informal procedures available.'" Johnson, ¶ 27. The Oklahoma Supreme Court explained that the appellant

incorrectly interprets this statute as requiring the Board to establish guidelines before imposing discipline on a licensed dentist.

Section 328.32 of title 59 [of the State Dental Act] gives the Board the power to revoke or suspend the license of a dentist, to place a dentist on probation, or to issue a public or private reprimand. Unlike section 302 of title 75, which requires the Board to enact rules relating to procedure, section 328.32 gives the Board discretion in determining the appropriate discipline. To the extent the discipline is not arbitrary or capricious, within the law, and supported by the facts, the decision as to what discipline is proper is within the discretion of the Board. See Robinson v. United States, 718 F.2d 336 (10th Cir. 1983).

Johnson, ¶¶ 27-28. Cf. State ex rel. Okla. Bar Ass'n v. Layton, 2014 OK 21, ¶ 30, 324 P.3d 1244 (Although "[d]iscipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct," and "[a]lthough this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors." (footnotes omitted)).

¶24 We also explained in Vanita Matthews-Glover that the board in question must be able to impose discipline in a manner consistent not with punishment per se,[6] but rather with the protection of the welfare of the public and the integrity of the profession it oversees:

The revocation of a physician's license[,] [for example,] . . . is designed not to punish the physician for his crimes but to protect the public health, welfare, and safety. The revocation or suspension of a license is not penal, but rather, the Legislature has provided for such to protect the life, health and welfare of the people at large[.]

[Levy v. Bd. of Registration & Discipline in Med., 392 N.E.2d 1036, 1041 (Mass. 1979)]. Cf. Robinson v. United States, 718 F.2d 336, 339 (10th Cir. 1983) ("[W]e must be mindful that once the agency determines that a violation has been committed, the sanctions to be imposed are a matter of agency policy and discretion."); State ex rel. Okla. Bar Ass'n v. Denton, 1979 OK 116, ¶ 6, 598 P.2d 663 ("In Oklahoma, the primary purpose of discipline is not punishment, but purification of the bar and protection of the courts and the public generally"; it also "acts as a restraining influence on other attorneys." (footnote omitted)).

Vanita Matthews-Glover, ¶ 31.[7]

¶25 Although the role of appraisers arguably has a less obvious or direct impact on the welfare of the people at large when compared with, for example, physicians, the Legislature, in its wisdom,[8] has nevertheless provided the Board with the authority and discretion to impose serious and meaningful discipline to protect the integrity of the profession and the public generally. Here, as we concluded above, the stipulated facts and testimony elicited at the hearing before the Board form a basis of substantial evidence in support of the Board's conclusions that Appellants violated 59 O.S. §§ 858-723(C)(1) and (C)(5). Among other things, a reasonable inference can also be drawn from the evidence presented below that Appellants knowingly subverted the authority of the Board -- in particular, the Board's authority to determine who is qualified for certification based on work actually performed by the applicant. As set forth above, Mr. Bales testified, "I've been practicing or appraising for ten years now, so I have a pretty good idea if someone's qualified to appraise or not, and [Mr. Pearce was] at that level," and he testified, "We were more trying to fluff the reports up to try to make them look more presentable to a reviewer just to make sure that, you know, just to make sure that [he] got through on [his] first attempt." When questioned at the hearing whether it is his "professional opinion that Mr. Pearce deserved licensure as an appraiser based on his own skills and his own work," Mr. Bales responded, "Yes, sir. It is."

¶26 Appellants also assert that the changes made to the reports were not extensive or substantive, but, from the stipulated facts alone,[9] this Court is unable to agree with Appellants that the Board, acting in its area of expertise, erred in concluding otherwise.

¶27 The Board states in its Answer Brief that "[Appellants'] actions in this matter are extremely serious: the submission of false information to the Board [for purposes of procuring a certification] showing work product which was not the same that was submitted to their clients for the purpose of securing a loan from a financial institution." This Court is similarly unable to conclude that the Board, acting in its area of expertise, erred in viewing Appellants' conduct as warranting serious discipline.

¶28 Without citation to authority or the record, Appellants assert that the mere fact of suspension, even for thirty days,

is a publicly reported death-sentence. Such suspension and probation of record will cause many lenders to simply drop the appraiser from their panel of appraisers and to discontinue any professional relationship with that appraiser. The suspension of license disqualifies an appraiser from working with a major bank, which in turn disqualifies the appraiser from working for the 3rd parties who create lender panels. Nearly all lender panels require the appraiser to complete work for Wells Fargo, Citibank, Bank of America, etc. regardless if the appraiser works for those major banks.

And many lenders and entities have a question on their application asking if the appraiser has even been sanctioned by any licensing board. A positive answer to that question often ends any hope that that entity will ever contract with that appraiser.

¶29 As the Board states, however, "There was no evidence submitted to support future lack of business at any time." Appellants' unsupported assertion on appeal that a "30-day suspension of [a] license" "is a death sentence for an appraiser" in that it will "cause nearly all major lenders to simply drop the appraiser from their panel of appraisers and to discontinue any professional relationship with that appraiser" may or may not be true; what is certain is that this Court cannot base its review of the Board's decision upon such unsupported statements of counsel. "[E]ven where plausible argument is submitted in the brief, if [it is] unsupported by citation of authorities, it will not overcome the presumption indulged in favor of the judgment." Gaines Bros. Co. v. Phillips, 1944 OK 254, ¶ 11, 151 P.2d 933 (citations omitted). "This Court does not base its decision upon either unsupported statements in a brief filed in this Court or unsupported statements made in argument of counsel to the trial court." State ex rel. Bd. of Regents of Univ. of Okla. v. Lucas, 2013 OK 14, ¶ 23, 297 P.3d 378 (footnote omitted).

¶30 Appellants also state that the Board imposed the disciplinary action that it did "with no mention . . . of any aggravating factors that might support such a draconian discipline," such as a finding that a "party or member of the public lost any money because their property was wrongfully valued," a finding that "either Appellant had any prior disciplinary action," or a finding that "either Appellant failed to cooperate with Board staff during the investigative process." Once again, however, the Legislature has granted the Board the authority to revoke or suspend a certificate as described above. Here, the Board chose to suspend Appellants' certificates for a thirty-day period. Importantly, Appellants' primary complaint on appeal pertains not to the thirty-day suspension itself, but to the alleged ramifications of such a suspension in the form of negative reactions of third parties in the industry. Appellants argue, in effect, that the Board should not be allowed to suspend a certificate, except in circumstances with multiple aggravating factors outside the statutory text, because a suspension of any length will result in this alleged "death sentence" to the appraiser's professional relationships.[10]

¶31 Once again, however, we cannot simply take Appellants' assertions in this regard as undisputed fact. "This court is not at liberty to utilize unsupported statements made in the brief of a party as a basis for an appellate decision." Smith v. Smith, 1978 OK CIV APP 20, ¶ 2, 579 P.2d 841 (citation omitted). Moreover, we must "vigorously resist reading words or elements into a statute that do not appear on its face." Okla. City Zoological Tr. v. State ex rel. Pub. Employees Relations Bd., 2007 OK 21, ¶ 6, 158 P.3d 461 (internal quotation marks omitted) (footnote omitted).

¶32 We conclude the discipline chosen by the Board is not arbitrary or capricious, and was properly within its discretion.

III. Other Violations

¶33 The Board also found Appellants "violated 59 O.S. § 858-723(C)(6) through 59 O.S. § 858-726, in that [Appellants] violated: A) The Ethics, and Conduct Sections of the Uniform Standards of Professional Appraisal Practice Ethics Rule; B) The Record Keeping Rule of the Uniform Standards of Professional Appraisal Practice." In addition, the Board found Appellants "violated 59 O.S. § 858-723(C)(6): 'Violation of any of the standards for the development or communication of real estate appraisals as provided in the Oklahoma Certified Real Estate Appraisers Act.'"

¶34 Section 858-723(C)(6) provides that discipline may be imposed for "[v]iolation of any of the standards for the development or communication of real estate appraisals as provided in the [OCREAA]," and § 858-726 provides:

An Oklahoma certified real estate appraiser must comply with the current edition of the Uniform Standards of Professional Appraisal Practice, as promulgated by the Appraisal Standards Board of the Appraisal Foundation when involved in a federally related transaction or a real estate-related financial transaction of the agencies, instrumentalities and federally recognized entities as defined and recognized by the [FIRREA], or when both the appraiser and user of appraisal services agree in writing that the work product is an appraisal, or when a written appraisal states that it is in compliance with the Uniform Standards of Professional Appraisal Practice.

¶35 Appellants refer to the additional violations in the Board's order as "some unspecified ethical and recordkeeping requirements." They assert these findings lack requisite specificity and are not supported by sufficient evidence.

¶36 We conclude that regardless of whether the conduct at issue stands in violation of these ethical or record keeping rules, the Board's imposition of discipline remains adequately grounded in its findings of violations of §§ 858-723(C)(1) and (C)(5), as set forth above.[11] Accordingly, we need not, and do not, determine whether the Board erred in concluding Appellants' conduct also violated certain ethical or record keeping rules.

CONCLUSION

¶37 The stipulated facts and testimony elicited at the hearing before the Board form a basis of substantial evidence in support of the Board's conclusions that Appellants violated 59 O.S. §§ 858-723(C)(1) and (C)(5). We further conclude the discipline chosen by the Board is not arbitrary or capricious, and was properly within its discretion. Consequently, we affirm the Board's order.

¶38 AFFIRMED.

RAPP, J., and FISCHER, J., concur.

FOOTNOTES

[1] The Supreme Court's order states that the Board's "order of suspension against Appellants is stayed during the pendency of the appeal." We note that this case was appealed in July 2018 and assigned to a panel of the Court of Civil Appeals in May 2019. It was subsequently reassigned to the present panel in 2020.

[2] Appellants assert that all of the Board's findings must be proved by clear and convincing evidence. Appellants quote authority that defines clear and convincing evidence, and assert that "clear and convincing evidence is clearly more than a preponderance of evidence as often used in many civil cases." Appellants then conclude: "Therefore, under the requirement of clear and convincing evidence, all evidence regarding the Appellants must be judged by that high standard." Appellants are correct that the applicable standard, below, was clear and convincing evidence. See, e.g., § 858-723(A) ("The Real Estate Appraiser Board, after notice and opportunity for a hearing, pursuant to Article II of the [OAPA], may issue an order imposing one or more of the following penalties whenever the Board finds, by clear and convincing evidence, that a certificate holder has violated any provision of the [OCREAA], or rules promulgated pursuant thereto[.]"). Nevertheless, as set forth above, the clear-and-convincing-evidence standard is not the review standard applicable on appeal. Were we to apply a clear-and-convincing-evidence standard, we would, in effect, be reviewing the Board's factual determinations de novo, rather than under the standard of substantial evidence, described above. As stated above, this Court applies the same standard applied by the district court, not by the Board, and the Board's decision is "reviewable by [the district court and this Court] in accordance with the provisions of the [OAPA]," 59 O.S. 2011 § 858-725(C), pursuant to which we also accord great weight to the expertise of administrative agencies. Furthermore, there is no indication the Board applied a different standard than that set forth in the OCREAA, nor do Appellants explicitly make such an argument.

[3] Appellants make an argument based on the last portion of this particular provision -- i.e., "or with the intent to substantially injure another person[.]" They argue that not only did they not intend to injure another person, there is no evidence that any person was injured by their actions. However, the language in question begins with the word "or," indicating it is the Legislature's intent that a violation of § 858-723(C)(5) can occur based on "[a]n act or omission involving dishonesty, fraud, or misrepresentation [either (a)] with the intent to substantially benefit the certificate holder or another person or [(b)] with the intent to substantially injure another person[.]" (Emphasis added.) See also Loughrin v. United States, 573 U.S. 351, 357 (2014) ("[O]rdinary use [of the word 'or'] is almost always disjunctive[.]" (citation omitted)). Substantial evidence supports the Board's decision that a violation occurred in the form of "[a]n act or omission involving dishonesty, fraud, or misrepresentation with the intent to substantially benefit the certificate holder or another person," nor is there any indication the remainder of this provision formed a basis of the Board's decision.

[4] The Board asserts: "This Court needs no reminder of the 2008 financial crisis to which fraudulent appraisals contributed." We note, relatedly, that an express purpose of the OCREAA is set forth as follows: "It is the intent of the Legislature to develop a real estate appraiser certification process which meets the federal guidelines set forth in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989." "Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ('FIRREA' or 'the act'), 12 U.S.C. § 1821, in response to the precarious financial condition of the nation's banks and savings and loan institutions" at that time. Resolution Tr. Corp. v. Love, 36 F.3d 972, 975 (10th Cir. 1994). Also, "[FIRREA] . . . was enacted in response to the lack of national uniform appraisal standards." Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n, No. CIV-08-1125-C, 2010 WL 11443362, at *10 (W.D. Okla. Dec. 10, 2010). The importance of the certification process for appraisers is reflected in § 858-704 of the OCREAA, which provides, in part:

A. No person, other than a trainee, state licensed, state certified residential or state certified general real estate appraiser, shall assume or use that title or any title, designation, or abbreviation likely to create the impression of certification as a real estate appraiser by this state. A person who is not certified pursuant to the provisions of the [OCREAA] shall not describe or refer to any appraisal or other evaluation of real estate located in this state by using the term "state certified."

B. Violation of subsection A of this section, including using or attempting to use the seal, certificate, or license of another as their own, or falsely impersonating any duly licensed appraiser, or using or attempting to use an inactive, expired, suspended, or revoked license, is declared to be adverse to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Real Estate Appraiser Board, through the Attorney General, or the local district attorney may maintain an action for injunctive relief in the district court in the county in which a violation of this section is alleged to have occurred to enjoin any person from engaging in such practice.

59 O.S. 2011 § 858-704 (emphasis added). Cf. Matter of Reinstatement of Cantrell, 1989 OK 165, ¶ 2, 785 P.2d 312 ("Foremost consideration must be given to protecting the public welfare.").

[5] Mr. Bales testimony in this regard was called into question during the hearing on the basis that Mr. Bales was the one who ultimately signed off on the original reports prepared by Mr. Pearce and submitted them to the clients. Mr. Bales was questioned at the hearing, "why were you needing to educate [Mr. Pearce] on how to do the appraisal better when you're the one who signed it originally?" Mr. Bales' lengthy response includes admissions that various things were "overlooked" originally, that Mr. Pearce (and another trainee) were "rushing through" the original reports, and that the changes made to the reports submitted to the Board were largely an attempt to make the reports "look more thorough" than they were originally. He responded:

Right. So, there were -- most of the commentary here is really more for adding to the report. Maybe they're things that, you know, I felt like we could have done a little bit better and in the training process probably got overlooked. At this stage of their careers which was later in their training process, I was -- I was kind of -- they had been trained pretty well, I think they were probably trying to -- I don't know, I felt like that maybe they were rushing through the reports a little bit, I didn't catch it at the time, but I went back through, and like I said, I sat down as an educational type thing and said, look, we could probably be doing these better. So, I mean, as far as the modifications, I mean, a lot of this stuff I believe is -- it's not -- material values in the report didn't change. We could have, you know, worded some things better and done a few things a little better, I believed. I will say at that stage of the game, I was -- I probably should have reviewed some of that stuff a little bit closer. I was more looking at, did we pull the correct comps, did we get the value correct? But then, again, a lot of this stuff is more just -- a lot of it is descriptive type stuff as well trying to make the report, you know, look more thorough.

[6] Appellants assert the Board is also "prohibited by the US Constitution, Amendment VIII and by the Oklahoma Constitution, Article II, Section 9, from imposing 'excessive fines' or 'cruel and unusual punishment.'" Appellants then state, however, that these "constitutional protections strictly speaking apply [only] to penalties handed down for persons convicted of criminal offenses[.]" Thus, we will apply the test set forth in Johnson.

[7] We note that, prior to the Board issuing its order, the Director of the Board requested a written opinion of the Attorney General in this matter regarding the Board's proposed action. The Attorney General opined (Attorney General Opinion 2018-93A):

The [OCREAA] authorizes the Board "[t]o censure, suspend and revoke certificates pursuant to the disciplinary proceedings provided in [the Act,]" see 59 O.S. Supp. 2017 § 858-706(7), and to require payment of fines and costs and the completion of educational programs. Id. § 858-723(A)(7)-(9). The Board may discipline licensees who "[v]iolat[e] any of the provisions in the code of ethics set forth in [the] Act." Id. § 858-723(C)(13). The Act requires adherence to the USPAP [i.e., the Uniform Standards of Professional Appraisal Practice], which contains professional requirements pertaining to ethics, competency, and scope of work. 59 O.S. 2011 § 858-726. The Board may reasonably believe that the proposed action is necessary to prevent future violations.

It is, therefore, the official opinion of the Attorney General that the [Board] has adequate support for the conclusion that this action advances the State's policy to uphold standards of competency and professionalism among real estate appraisers.

[8] See n.4, supra. Indeed, as implied by the Board on appeal, appraisers, at least cumulatively, can have a tremendous impact on the public welfare.

[9] As set forth above, Appellants agreed "[t]he modifications included changes to the neighborhood description, market conditions, summary of sales comparison approach, and in one instance, the site value was changed in the cost approach."

[10] Appellants state, for example, that "the fact of suspension is a publicly reported death sentence. Such suspension and probation of record will cause nearly all major lenders to simply drop the appraiser from their panel of appraisers and to discontinue any professional relationship with that appraiser."

[11] We note that our independent review of the OCREAA has revealed that in § 858-732 the Legislature has set forth a concise "code of ethics" based on the Uniform Standards but has further specified that "it is not the intent of the Legislature to incorporate the [ethical] standards set forth in the Uniform Standards of Professional Appraisal Practice." See also § 858-702(A)(2). Appellants do not make a statutory argument based on these provisions, and we decline to pursue such an argument for Appellants. Furthermore, the Board's imposition of discipline remains adequately grounded in its findings of violations of §§ 858-723(C)(1) and (C)(5).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2015 OK CIV APP 99, 368 P.3d 436, TAYLOR v. OKLAHOMA WATER RESOURCES BOARD
Discussed
 1978 OK CIV APP 20, 579 P.2d 841, SMITH v. SMITH
Discussed
 2019 OK CIV APP 76, 455 P.3d 16, STATE ex rel. OKLA. STATE BD. OF BEHAVIORAL HEALTH LICENSURE v. MATTHEWS-GLOVER
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 165, 785 P.2d 312, Reinstatement of Cantrell, Matter of
Discussed
 1994 OK 134, 886 P.2d 485, 65 OBJ 4025, City of Hugo v. State ex rel. Public Employees Relations Bd.
Discussed
 1996 OK 41, 913 P.2d 1339, 67 OBJ 1027, Johnson v. Bd. Of Gov. of Registered Dentists
Discussed
 2007 OK 21, 158 P.3d 461, OKLAHOMA CITY ZOOLOGICAL TRUST v. STATE ex rel. PUBLIC EMPLOYEES RELATIONS BD.
Discussed
 2007 OK 39, 176 P.3d 1194, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY v. McCRADY
Discussed
 2013 OK 14, 297 P.3d 378, STATE ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA v. LUCAS
Discussed
 2014 OK 21, 324 P.3d 1244, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LAYTON
Discussed
 2014 OK 95, 341 P.3d 56, AMERICAN AIRLINES, INC. v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed
 1979 OK 116, 598 P.2d 663, STATE EX REL. OKLAHOMA, ETC. v. DENTON
Discussed
 1981 OK 29, 626 P.2d 316, Tulsa Area Hospital Council, Inc. v. Oral Roberts University
Discussed
 1944 OK 254, 151 P.2d 933, 194 Okla. 374, GAINES BROS. CO. v. PHILLIPS
Discussed
Title 59. Professions and Occupations
 Cite
Name
Level

 59 O.S. 858-700, Short Title
Cited
 59 O.S. 858-704, State Certified - Injunction -Temporary Restraining Orders - Voluntary Nature of Act
Cited
 59 O.S. 858-706, Board Powers and Duties
Cited
 59 O.S. 858-723, Penalties - Grounds for Discipline - Effect of Civil Judgments - Complaints
Discussed at Length
 59 O.S. 858-725, Hearing on Charges - Time and Place - Finding of Fact - Final Decision or Order
Discussed
 59 O.S. 858-726, Compliance with Uniform Standards of Professional Appraisal Practice
Discussed at Length


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA